[No. D006216. Fourth Dist., Div. One. Sept. 7, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
LAWRENCE S. RUBY, Defendant and Appellant.

COUNSEL

Denise M. Ducheny, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Michael D. Wellington and Lilia E. Garcia, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

WORK, J.—Lawrence S. Ruby, a drug-addicted, decorated Vietnam combat veteran, appeals from a judgment convicting him of unlawfully possessing a controlled substance (Health & Saf. Code,[1] § 11350, subd. (a)) with a prior possession conviction within the meaning of section 11370, subdivision (a). Ruby contends the trial court erred in believing it had no discretion to strike the section 11370, subdivision (a) allegation and grant him probation, and in failing to evaluate his amenability to serve his sentence in a federal correctional institution designed to treat drug-addicted Vietnam combat veterans as required by Penal Code section 1170.9. For the reasons which follow, we conclude the trial court erred in believing it had no discretion to strike the prior conviction allegation. We further find the record does not show the court fully evaluated whether it was appropriate to commit Ruby to federal confinement pursuant to Penal Code section 1170.9 in light of the substantial legislative concern for such placement where drug addiction is shown to be associated with postcombat trauma incurred by those who served in Vietnam. We remand for resentencing in accordance with our decision.

### FACTUAL AND PROCEDURAL BACKGROUND

On October 5, 1986, while Ruby was driving his truck, he was recognized by police officers as a known drug addict for whom there was an outstanding arrest warrant. They stopped him. Predictably, he exhibited physical symptoms of his addiction. He was nervous and shaking and had the usual addict's paraphernalia, a syringe cap, a spoon (burnt at the bottom), a thin belt, a cup of water, cotton swabs and matches in plain view and a bindle of cocaine in his pocket.

---

[1] All statutory references are to the Health and Safety Code unless otherwise specified.

I

*The Trial Court Had the Discretion to Strike the Section 11370, Subdivision (a) Allegation*

At sentencing, Ruby asked the trial court to exercise its discretion and strike the section 11370, subdivision (a)[2] allegation in the furtherance of justice. (Pen. Code, § 1385.)[3] The trial court refused on the ground it had no discretion to employ the powers of Penal Code section 1385.

Penal Code section 1385 allows courts to dismiss or strike allegations which, if proven, would enhance punishment for alleged criminal conduct. (*People* v. *Williams* (1981) 30 Cal.3d 470, 483 [179 Cal.Rptr. 443, 637 P.2d 1029], citing *People* v. *Tanner* (1979) 24 Cal.3d 514 [156 Cal.Rptr. 450, 596 P.2d 328].) The People contend section 11370, subdivision (a) precludes the court from striking or dismissing under Penal Code section 1385, relying on general language in *Tanner,* that suggests a court has no power to disregard prohibitions against probation grants where the statutory intent to curtail that judicial power is clear. Unlike the statute analyzed in *Tanner,* there is no express legislative intent either in the statutory language or its legislative history to preclude the exercise of judicial discretion under Penal Code section 1385. Thus, we are bound by the decisions of our Supreme Court permitting application of Penal Code section 1385 discretion in these circumstances. The precise provisions of section 11370 we now address were directly considered in its predecessor statute (§ 11715.6, repealed by Stats. 1972, ch. 1407, § 2, p. 2987) in *In re Cortez* (1971) 6 Cal.3d 78, 84-89 [98 Cal.Rptr. 307, 490 P.2d 819]. The Supreme Court unanimously held the precise prohibitory language relied on by the People here did not preclude granting a defendant's motion to strike the priors for the express purpose of avoiding the prohibition against probation in an appropriate case. The court recognized the statutory language "flatly prohibits probation" (*id.* at p. 85), but that the court was still empowered to strike the prior conviction and remove that probationary impediment. Seventeen years have passed since *In re Cortez* stated its proposition without any legislative response. (See also *In re Banks* (1971) 6 Cal.3d 91 [98 Cal.Rptr. 314, 490 P.2d 826], a companion case to *In re Cortez* addressing

---

[2] Section 11370, subdivision (a) provides: "Any person convicted of violating Section 11350, 11351, 11351.5, 11352, 11353, 11355, 11357, 11359, 11360, 11361, 11363, 11366, or 11368, or of committing any offense referred to in those sections, shall not, in any case, be granted probation by the trial court or have the execution of the sentence imposed upon him or her suspended by the court, if he or she has been previously convicted of any offense described in subdivision (c)."

[3] Penal Code section 1385 provides in pertinent part: "The judge or magistrate may, either of its own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed."

the same facts and issues.) In *People* v. *Ruiz* (1975) 14 Cal.3d 163, 167 [120 Cal.Rptr. 872, 534 P.2d 712], the Supreme Court remanded for resentencing a case factually identical to Ruby's, citing *In re Cortez*. The court stated that although defendant's prior narcotic conviction rendered him facially ineligible for probation under section 11370, subdivision (a), counsel's plea for probation at the sentencing hearing was in effect a motion to strike the prior and admit defendant to probation. The trial court had primarily denied the probation request due to the nature of defendant's current offense, i.e., possessing heroin for sale. However, on appeal defendant's conviction for possessing heroin for sale was modified to simple possession so that he then stood convicted of the exact current and prior crime as does Ruby now. The court then remanded the matter to the trial court for a new probation hearing in view of Ruiz's modified conviction, which was precisely the same as Ruby's; i.e., a conviction for possession with a prior narcotics conviction. Ruby, like Ruiz, has requested probation and moved to strike the allegation at sentencing, a matter the court in *Ruiz* states is within the court's discretion under Penal Code section 1385.

The People were apprised of the holdings in *Ruiz* and *In re Cortez,* but have not attempted to distinguish them to us on this appeal. At oral argument, they concede these authorities bind us under the rule promulgated in *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937], unless the present case is distinguishable. It is not and we are compelled to conclude the court erred in not exercising its discretion when ruling on Ruby's motion to strike his prior conviction. (*In re Banks, supra,* 6 Cal.3d at p. 93.)[4]

## II

### *The Court Failed to Exercise the Discretion Required by Penal Code Section 1170.9*

■ At sentencing, Ruby introduced evidence of a medical diagnosis showing he manifests posttraumatic stress syndrome resulting from his

---

[4]Contrary to the belief of our dissenting colleague, *People* v. *Tanner, supra,* 24 Cal.3d 514, did not hold the "unequivocal language of section 1203.06 conclusively barred" Penal Code section 1385 discretion. *Tanner* relied on an analysis of the legislative history which the majority interpreted as conclusively showing the Legislature intended to preclude judicial discretion under Penal Code section 1385.

That *Tanner* does not hold in accordance with the interpretation given it by the dissent here is firmly established by interpretation in *People* v. *Williams, supra,* 30 Cal.3d 470, where, at page 483, the Supreme Court states, "Although section 1203.06 did not expressly state that judicial discretion under section 1385 was precluded, this court found sufficient *indices of such an intent in the history of the statute.*" (Italics added). Thus, it was not the language of the statute, but its interpretation in light of legislative declarations of intent on which *Tanner's* holding is bottomed.

Vietnam combat service. He asserts this diagnosis triggers the Penal Code section 1170.9[5] mandate that the court determine whether appropriate federal programs are available so that it may then exercise its discretion whether to order him to serve his prison sentence in that program rather than state prison.

Defendants who establish they were members of the United States military forces, served in combat in Vietnam and suffer from substance abuse as a result of that service may be committed to the custody of federal correctional authorities at the court's discretion. (*People* v. *Enriquez* (1984) 159 Cal.App.3d 1, 6 [205 Cal.Rptr. 238].) Here, although the court apparently found Ruby's military combat service in Vietnam resulted in a present post-traumatic syndrome, it did not commit him to a federal treatment program or even investigate to determine if one was available.  ■  Its failure to inquire into the availability of the federal program appears to have resulted from a misapprehension of counsel that probation would have to be granted before a commitment could be made. Although placement in the federal program is not mandated, the commitment is available specifically to persons who are not granted probation and would otherwise be imprisoned. (See *People* v. *Lara* (1984) 155 Cal.App.3d 570, 574 [202 Cal.Rptr. 262]; *People* v. *Galvan* (1984) 156 Cal.App.3d 144, 145 [202 Cal.Rptr. 594].) Thus, the denial of probation does not preclude the court from considering this alternative.  ■  Moreover, there are many factors in this record which might justify such a placement. Ruby was a Vietnam combat veteran who was badly injured during service and who suffers from substance abuse diagnosed as causally related to his combat experience. The court received psychological reports stating Ruby's deep-seated emotional and drug problems stem from his combat service in Vietnam. One report specifically recommends Ruby for Post Traumatic Stress Disorder treatment at a federal facility designed specifically for Vietnam veterans. The report identified one such site at Menlo Park, California and stated the author, Dr. Jon Nachison, would identify other such facilities "around the country" on request. Thus, this is not a case in which our review assures us the trial court, had it exercised its discretion, would have been justified only in rejecting a federal placement.

---

[5]Penal Code section 1170.9 provides: "In the case of any person convicted of a felony who would otherwise be sentenced to state prison the court shall consider whether the defendant was a member of the military forces of the United States who served in combat in Vietnam and who suffers from substance abuse or psychological problems resulting from that service. If the court concludes that the defendant is such a person, the court may order the defendant committed to the custody of federal correctional officials for incarceration for a term equivalent to that which the defendant would have served in state prison. The court may make such a commitment only if the defendant agrees to such a commitment, the court has determined that appropriate federal programs exist, and federal law authorizes the receipt of the defendant under such conditions."

For the guidance of the trial court on remand we note Penal Code section 1170.9 requires it to consider three factors if it concludes Ruby has substance abuse *or* psychological problems resulting from combat service in Vietnam. First, does the defendant agree to such a commitment? Second, do appropriate federal programs exist? Three, is there a federal facility authorized to receive the defendant? Should each of the foregoing considerations be satisfied, the court must determine whether it is reasonable and constructive to order the alternative federal placement. We believe it should do so in the light of analogous policy considerations articulated in *People* v. *Ortiz* (1964) 61 Cal.2d 249 [37 Cal.Rptr. 891, 391 P.2d 163]. There the Supreme Court, addressing the trial court's failure to commit a defendant to the California Rehabilitation Center emphatically stated that discretion vested in a trial court in determining whether to institute narcotics addiction commitments following conviction, "should be exercised with a view to implementing, rather than possibly frustrating, the strong legislative policy disclosed by the enactments creating and governing the . . . program." (*Id.* at pp. 254-255.) The court recognized the legislative policy was "responsive to the current medico-social approach to the issue of drug addiction. . . ." (*Ibid.*; see also *People* v. *Davis* (1984) 160 Cal.App.3d 970, 980 [207 Cal.Rptr. 18]; *People* v. *Perez* (1987) 196 Cal.App.3d 686, 693 [242 Cal.Rptr. 135].)

Here, the strong legislative concern for narcotic addicts whose drug dependence or other severe psychological malfunctions relate to combat stress incurred by the unique military and social pressures imposed on our service personnel as a result of Vietnam service is evident on the face of the statute. Providing these persons with a specialized federal treatment program while they serve their prison terms permits specialized analysis and care in a setting specifically designed to maximize the benefits of treatment by professionals trained to cure drug dependency and other problems by treating their underlying cause, the emotional trauma of Vietnam combat service. It is precisely for this reason Dr. Nachison recommended such a placement. Had the Legislature believed its present narcotics rehabilitation programs at state prison and at CRC were adequate to address the complex needs of addicts suffering from posttraumatic stress disorder created by Vietnam combat service, it would not have singled those persons out for a possible alternative disposition. That it enacted Penal Code section 1170.9 emphasizes the Legislature's strong concern emotionally affected Vietnam veterans be afforded every opportunity to get meaningful rehabilitative treatment in a facility specifically designed to deal with their unique and complex disorder.

## DISPOSITION

The judgment is reversed and the trial court is directed to resentence Ruby in accordance with this opinion. In all other respects, the judgment is affirmed.

Wiener, Acting P. J., concurred.

**WOODWORTH, J.,**\* Concurring and Dissenting.—I concur in the conclusions reached in part two of the majority opinion. The trial court, having once found that Ruby suffered from a Vietnam-related stress syndrome, ought to have considered whether Ruby should be committed to federal custody under the provisions of Penal Code[1] section 1170.9. In view of Ruby's history of three felony convictions within a span of two years, and occasional possession of firearms, it is not a bit clear that he was a suitable candidate for such commitment. But the sentencing court cannot reject the possibility out of hand. Discretion must be exercised.

I respectfully dissent from part one of the majority opinion. In my view, the trial court correctly ruled it had no power to strike the prior conviction or to grant probation.

The holding of the Supreme Court in *People* v. *Tanner* (1979) 24 Cal.3d 514 [156 Cal.Rptr. 450, 596 P.2d 328] is determinative. In that case it was decided that the unequivocal language of section 1203.06 conclusively barred the trial court from exercising discretion to dismiss or strike under the provisions of section 1385. The language of Health and Safety Code section 11370, subdivision (a), is indistinguishable from that of section 1203.06: "shall not, in any case, be granted probation by the trial court . . . ." Footnote 3 at page 519 of the *Tanner* decision is apposite: "We reject any contention that courts are inherently or constitutionally vested with ultimate authority in fixing sentences or imposing penalty enhancing factors . . . ."

The decision in *People* v. *Williams* (1981) 30 Cal.3d 470, 484 [179 Cal.Rptr. 443, 637 P.2d 1029] expressly endorses the *Tanner* holding; the result was different only because the court was there dealing with code sections (§ 190 et seq.) that do not purport to bar dismissal under section 1385. The cases of *In re Cortez* (1971) 6 Cal.3d 78 [98 Cal.Rptr. 307, 490 P.2d 819] and *People* v. *Ruiz* (1975) 14 Cal.3d 163 [120 Cal.Rptr. 872, 534

---

\* Assigned by the Chairperson of the Judicial Council.

[1] All statutory references are to the Penal Code unless otherwise specified.

P.2d 712], no longer afford any authority on this issue, of course, since they were impliedly overruled by the subsequent *Tanner* decision.

Apart from the *Tanner* rationale, I would venture to suggest that normally the plea bargain itself, in a case such as this, would impliedly bar any exercise of the power to strike enhancing allegations, once they were unconditionally admitted by the defendant. The legislative design of section 1192.5 establishes a *contractual* matrix. It "contemplates an agreement negotiated by the People and the defendant and approved by the court." (*People* v. *Orin* (1975) 13 Cal.3d 937, 942 [120 Cal.Rptr. 65, 533 P.2d 193].) And the Supreme Court said in *People* v. *Kaanehe* (1977) 19 Cal.3d 1, 13 [136 Cal.Rptr. 409, 559 P.2d 1028]: "When the breach is a refusal by the court to sentence in accord with the agreed upon recommendation, specific enforcement would entail an order directing the judge to resentence the defendant in accord with the agreement. The People as well as a defendant may seek such specific enforcements."

Here, however, Ruby at the time of changing his plea expressly reserved his right to move, at the time of sentencing, to have the section 11370, subdivision (a) allegation stricken. Accordingly, it is only the *Tanner* holding that barred the court from exercising discretion under section 1385.

Accordingly, I would hold that, upon resentencing, the court shall sentence Ruby to state prison for a term not exceeding two years, unless he be found eligible for commitment under section 1170.9.

Appellants' petition for review by the Supreme Court was denied December 8, 1988.